**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

TERRYOINE JEROME DAVIS (1), MALIK KHALIPH MARSHALL (2), and DONTE OWENS GARDNER (3),

Defendants.

Case No. 25-CR-350 (NEB/ECW)

ORDER ON REPORT AND RECOMMENDATION

Defendants Terryoine Jerome Davis, Malik Khaliph Marshall, and Donte Owens Gardner were each indicted on one count of conspiracy to distribute fentanyl and cocaine as well as one count of possession with intent to distribute the same, all in violation of 21 U.S.C. Sections 841(a)(1), (b)(1)(A), (b)(1)(C), and 846. (ECF No. 1.) Marshall was also indicted on two counts of firearm possession in violation of 18 U.S.C. Sections 922(g)(1), 924(a)(8), 924(c)(1)(A)(i). (*Id.*)

Defendants jointly move to suppress evidence. (ECF Nos. 49, 50, 52, 53, 56.) United States Magistrate Judge Elizabeth Cowan Wright recommends that this Court largely deny the motions. (ECF No. 95 ("R&R").) Defendants object to the R&R. (ECF Nos. 99, 100.)

The Court has reviewed Judge Wright's thorough R&R *de novo*. *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3); D. Minn. L.R. 72.2(a)(3), (b)(3). Based on that *de novo* review, the Court overrules Defendants' objections and accepts the R&R.

## BACKGROUND

Judge Wright's Report and Recommendation recounts the facts and procedural history of this case, which are undisputed. The Court incorporates the R&R's summary and repeats only those facts necessary for context.[1]

Defendants' charges stem from the execution of a search warrant at an apartment on University Avenue—a suspected stash house. (ECF No. 1; R&R at 7–8.) The building was initially identified through a Minnesota Bureau of Criminal Apprehension ("BCA") investigation of Ramadhan Abdul Jabbar, who is not a defendant here. (R&R at 6–7.) A source of information contacted the BCA with tips about Jabbar's suspected fentanyl trafficking operation, including that Jabbar (a) sells large amounts of powder fentanyl and fentanyl-laced pills; (b) facilitates transactions and communicates with associates via phone; and (c) has a stash house on University Avenue. (*Id.*) After obtaining a warrant, the BCA traced Jabbar's phone activity to the apartment. (*Id.* at 7.) The BCA discovered that the renter of that unit provided a false name and driver's license number, but that the renter's phone number was connected to Jabbar's ex-wife. (*Id.*)

Special Agent Korus and other officers of the BCA conducted a trash pull of multiple garbage bags outside the apartment. (*Id.* at 7–8.) A confidential SOI informed the BCA that the Apartment used white garbage bags with blue drawstrings, whereas other units in the building used bags with grey or black drawstrings. (*Id.*) Law enforcement located six white garbage bags with blue drawstrings in the trash receptacle, which contained cut-open plastic baggies covered in white powdery residue; multiple discarded latex gloves; and bottles of a suspected cutting agent. (*Id.* at 8.) Some of these

[1] When citing the R&R, the Court incorporates the citations within that document.

items alerted positive for controlled substances including fentanyl, oxycodone, and cocaine. (*Id.*)

A few days later, Special Agent Korus and other law enforcement officers executed a residential judicial search warrant for the apartment. (*Id.*) When executing the warrant, officers recovered powder fentanyl, thousands of fentanyl pills, cocaine, three loaded firearms, about $200,000 in cash, and eight cell phones. (*Id.* at 8, 28.) All three Defendants—all identified as convicted felons prohibited from possessing firearms—were arrested at the scene. (*Id.* at 8.) Jabbar was not present, but Special Agent Korus believed that he was involved in the sale and manufacturing of these narcotics. (*Id.*)

Special Agent Korus then applied for, and secured, another judicial warrant authorizing the search of nine cell phones: the eight seized from the apartment, plus one seized from Jabbar elsewhere.[2] (*Id.* at 9–10.) The warrant restricted the search to digital content of the phones within a two-month timeframe. (*Id.* at 9.) Law enforcement also obtained three warrants authorizing the collection of buccal swabs from Defendants. (*Id.* at 27.)

Defendants now seek to suppress evidence from the cell phones and DNA collection, as well as other forms of evidence. Judge Wright recommends denying Defendants' motions to suppress, except as to the ninth phone (belonging to Jabbar) and as to phone data outside the timeframe authorized by the warrant.[3] (R&R at 25, 39.)

---

[2] The search warrant was amended and signed the same day. (R&R at 9.) The parties agree that the constitutional analysis is essentially the same for the initial warrant and the amended, operative warrant. (*Id.*)

[3] The government does not object to suppressing the evidence outside the warrant's time restrictions. (ECF No. 101 at 1 n.1.)

Defendants devote the bulk of their objections to the cell phone and DNA evidence, preserving other issues for appellate review. (ECF Nos. 99, 100.)

**ANALYSIS**

**I. Cell Phone Evidence**

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Of course, this "guarantee against unreasonable searches extends to data on a person's private cellular telephone." *United States v. Suellentrop*, 953 F.3d 1047, 1049 (8th Cir. 2020). Courts emphasize that "'cell phones differ in both a quantitative and a qualitative sense from other objects' due to the volume of personal information they store." *Robbins v. City of Des Moines*, 984 F.3d 673, 681 (8th Cir. 2021) (quoting *Riley v. California*, 573 U.S. 373, 393–94 (2014)).

Defendants seek to suppress all evidence obtained from the searches of the eight phones recovered during the Apartment search. They advance five objections to the R&R: (1) law enforcement examined a phone's contents before the search warrant was issued; (2) the warrant lacked probable cause; (3) the warrant was overbroad and insufficiently particular; (4) law enforcement exceeded the warrant's temporal restrictions when executing the search; and (5) the good-faith exception should not apply.

***A. Pre-Warrant Search***

In their objection to the R&R, Defendants argue for the first time that law enforcement viewed the contents of a seized phone *before* the search warrant was issued. (ECF No. 99 at 5–7.) Citing photographs taken during the Apartment search, Defendants contend that this search was unconstitutional under *Riley* and invalidates the subsequent

phone warrant. (*Id.*) Because this is a new argument not raised before Judge Wright, the Court does not consider it. *Ridenour v. Boehringer Ingelheim Pharms., Inc.*, 679 F.3d 1062, 1067 (8th Cir. 2012) ("Just as parties cannot present arguments to the appellate court that they did not raise before the district court, parties must take before the magistrate, not only their best shot but all of their shots." (citation modified)); *United States v. Crutchfield*, No. 22-CR-269 (PJS/DJF), 2023 WL 3317992, at *1 (D. Minn. May 9, 2023) (applying *Ridenour* in criminal order on motions to suppress).

### B. *Probable Cause & Nexus*

The Fourth Amendment requires that probable cause be shown before a judge authorizes a search warrant. U.S. Const. amend. IV; *United States v. Williams*, 477 F.3d 554, 557 (8th Cir. 2007). "Probable cause exists when a practical, common-sense inquiry that considers the totality of the circumstances set forth in the information before the issuing judge yields a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Stevens*, 530 F.3d 714, 718 (8th Cir. 2008) (citation modified). When evaluating whether probable cause to issue a search warrant has been established, reviewing courts must accord "great deference" to the issuing judge's probable-cause determination. *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (citing *United States v. Leon*, 468 U.S. 897, 914 (1984)). The Court looks to the four corners of the supporting affidavit to determine whether there was probable cause to search the eight phones at issue here. *Id.*

Defendants argue that the affidavit relied on a narrative about Jabbar's suspected drug trafficking operation to bootstrap that nexus to the eight phones found in the apartment. (ECF No. 99 at 3–4.) In a similar vein, Defendants also request a *Franks*[4]

---

[4] *Franks v. Delaware*, 438 U.S. 154 (1978).

hearing, arguing that the warrant application failed to make clear that (a) Jabbar was not present at the scene; (b) the eight phones were seized from three individuals in separate rooms; and (c) the ninth phone was seized from Jabbar at a different location. (*Id.* at 8.) Through these omissions, Defendants contend, the affidavit falsely implied that all of the phones belonged to Jabbar. (*Id.*)

This is a strawman. Contrary to Defendants' representation, the nexus that supports probable cause runs through the place (the apartment)—not the person (Jabbar).[5] Law enforcement conducted a trash pull from the apartment and recovered items consistent with drug trafficking—cut-open baggies with powder residue; cutting agents; and discarded gloves—that alerted positive for controlled substances. When officers executed a search warrant two days later, they encountered three loaded firearms, a large volume of drugs, and bulk cash—along with Defendants and their eight phones. The affiant, based on his training and experience, attested that cellular phones are common tools in the sale and distribution of controlled substances.

As Judge Wright thoroughly recounts in the R&R, courts routinely conclude that similar circumstances give rise to probable cause. (R&R at 13–15.) Defendants fail to rebut the R&R on its own terms, much less meaningfully distinguish any of the cases it cites. Based on a *de novo* review, the Court concludes that there was probable cause to search the eight phones seized from the apartment.

---

[5] For this reason, any omissions related to Jabbar were not material. Thus, a *Franks* hearing is not warranted.

### *C. Particularity & Overbreadth*

The particularity requirement prohibits law enforcement "from conducting general, exploratory rummaging of a person's belongings," and requires that the warrant be "sufficiently definite to enable the searching officers to identify the property authorized to be seized." *United States v. Shrum*, 59 F.4th 968, 973 (8th Cir. 2023) (citations omitted). This requirement is "one of practical accuracy rather than of hypertechnicality." *Id.* (citation omitted). "Whether a warrant fails the particularity requirement cannot be decided in a vacuum. The court will base its determination on such factors as the purpose for which the warrant was issued, the nature of the items to which it is directed, and the total circumstances surrounding the case." *United States v. Fiorito*, 640 F.3d 338, 346 (8th Cir. 2011) (citation modified).

Defendants maintain that the warrant in this case was overbroad and insufficiently particular. (ECF No. 99 at 11–13.) But the warrant only permits officers to seize information related to drug and firearms possession—the charged offenses—within a two-month period around the time of suspected trafficking activity. (R&R at 19–20.) Together, these features indicate that "[t]he warrant did not authorize a blanket search of documents for no particular purpose." *Fiorito*, 640 F.3d at 347.

Although the warrant lays out expansive categories of digital contents to be searched, this was reasonable given the circumstances. Warrants identifying general classes of items are sufficiently particular if the specific goods to be seized could not be identified when the warrant was issued. *United States v. Horn*, 187 F.3d 781, 788 (8th Cir. 1999) (citation omitted). And, as pertinent for the phone warrants at issue here, courts have recognized that "the unique nature of electronic-storage mediums makes it difficult to know ex ante where or in what format relevant evidence may be stored." *United*

*States v. Fordham*, --- F.4th ---, 2026 WL 2110825, at *9 (6th Cir. 2026); *see also United States v. Sherman*, 372 F. App'x 668, 675–76 (8th Cir. 2010). The officers could not have known where, specifically, responsive evidence would be stored in the phones, and the types of data listed in the warrant are reasonably limited to those likely to contain evidence of drug and firearms possession, as well as to establish ownership and usage of the device.

For these reasons, the Court concludes that the warrant was sufficiently particular and not overbroad.

***D. Exceeding Temporal Scope of Warrant***

The government acknowledges that it reviewed digital contents from outside the two-month window specified in the phone warrant, and it has agreed not to use any out-of-range materials in its case-in-chief. (ECF No. 61 at 2; *see* ECF No. 49 at 6 (listing the out-of-range evidence).) Defendants, for their part, seek full suppression of the phones' contents instead, arguing that this overreach transformed the phone searches into impermissible general searches. (ECF No. 99 at 14–15.)

Defendants rely on *Marvin v. United States*, which held that "[a] flagrant disregard for the limitations of a search warrant might make an otherwise valid search an impermissible general search and thus require the suppression or return of all evidence seized during the search." 732 F.2d 669, 674–75 (8th Cir. 1984). But the flagrant-disregard standard laid out in *Marvin* "applies only where the government exceeds the scope of the authorized search in terms of the places searched, and not to cases in which the government indulges in excessive seizures." *United States v. Tenerelli*, 614 F.3d 764, 771 (8th Cir. 2010) (citation omitted). Because the warrant authorized searching the phones—the place to be searched—exceeding the temporal scope of the warrant does not amount

to flagrant disregard. *See United States v. Dahl*, No. 13-CR-139 (PAM/JSM), 2013 WL 6175711, at *10 (D. Minn. Nov. 26, 2013).

When it comes to remedy, "as long as the unlawfully seized items are suppressed, 'there is certainly no requirement that lawfully seized evidence be suppressed as well.'" *United States v. Decker*, 956 F.2d 773, 779 (8th Cir. 1992) (quoting *Waller v. Georgia*, 467 U.S. 39, 43 n.3 (1984)); *see also United States v. Debevec*, No. 23-CR-40033 (KES), 2024 WL 4024154, at *13 (D.S.D. Sept. 3, 2024) ("Even if data from outside the date restrictions were searched, the remedy is suppression of that data—not the wholesale suppression of all data acquired under the warrant."). Accordingly, only the phone data from outside the temporal range specified in the warrant requires suppression.

### *E.* **Leon *Good-Faith Exception***

"Searches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *United States v. Leon*, 468 U.S. 897, 922 (1984) (citation modified). Accordingly, under the *Leon* good-faith exception, "the exclusionary rule should not be applied so as to bar the admission of 'evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate,' even if that search warrant is later held to be invalid." *United States v. Clay*, 646 F.3d 1124, 1127 (8th Cir. 2011) (quoting *Leon*, 468 U.S. at 900, 922–23). The inquiry is "confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization." *Id.* (citation omitted).

Even if Defendants are correct that the issuing judge wrongly approved the search warrant, it was not so lacking in probable cause as to "render official belief in its existence

entirely unreasonable." *Leon*, 468 U.S. at 923 (citation omitted). Given the facts, a reasonably well-trained officer would not have known that a search of Defendants' cellular phones was unconstitutional. Based on a *de novo* review, the Court concludes that the *Leon* exception applies.

## II. DNA Evidence

Defendants also seek to suppress DNA evidence obtained via buccal swab, arguing that the three authorizing warrants were substantially identical and thus lacked individualized probable cause as to each Defendant. (ECF No. 99 at 15–16; ECF No. 50.)

As noted previously, probable cause exists when, based on the totality of the circumstances, there is a fair probability that evidence of a crime will be found in a particular place. *Solomon*, 432 F.3d at 827. Defendants were arrested at the scene, where law enforcement discovered three loaded firearms and a large volume of drugs. The warrant application also noted that all three Defendants are prohibited from possessing firearms and ammunition on account of their prior felony convictions. (R&R at 27–28.) It is easy to see why the buccal swab warrants were substantially identical: Defendants were found in the same apartment, next to the same contraband, and with the same prohibited-person status. A showing of probable cause can rest on the same theory for each Defendant and still be individualized as to each of them—linking any of Defendants' DNA to the contraband would constitute evidence of a crime.

Based on a *de novo* review, the Court concludes that probable cause existed to issue the buccal swab warrants, and even if probable cause did not exist, the officers involved acted in objectively reasonable reliance on the warrant.[6]

## III. Remaining Motions to Suppress

That leaves three motions to suppress, all of which are straightforward. *First*, Defendants seek to suppress all evidence seized during the apartment search because the officers waited only thirty-eight seconds between knocking and entering. (ECF No. 52.) Judge Wright recommends denying the motion to suppress. (R&R at 25–27.) Defendants object, but only to preserve the issue for appellate review; they concede that the motion should be denied under binding precedent. (ECF No. 100 at 1–2); *Hudson v. Michigan*, 547 U.S. 586, 594 (2006) (explaining that knock-and-announce interests are unrelated to the seizure of evidence, so exclusion is not an applicable remedy). The Court denies this motion to suppress.

*Second*, the government agrees to self-suppress the body-camera and squad-camera footage, as well as any identification, visual, association, and agreement evidence from the vehicle stop on November 18, 2024. (ECF No. 103 at 5.) Accordingly, the Court denies Defendants' motion to suppress that evidence as moot. (ECF No. 53.)

*Third*, Gardner moves to suppress his custodial statements, arguing that he received a defective *Miranda* warning and that law enforcement disregarded his invocation of the right to remain silent. (ECF No. 56.) Judge Wright recommends denying the motion (R&R at 34–39), and Gardner does not object. Reviewing for clear error,

---

[6] Defendants do not raise any specific objection to the R&R's finding that the good-faith exception applies to the DNA warrant.

*Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (per curiam), the Court finds none. The Court denies Gardner's motion to suppress.

**CONCLUSION**

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. The Report and Recommendation (ECF No. 95) is ACCEPTED;

2. Defendants' Objections (ECF Nos. 99, 100) are OVERRULED;

3. Defendants' Joint Motion to Suppress Evidence Obtained by Search and Seizure (Cell Phone Evidence) (ECF No. 49) is GRANTED IN PART only as to evidence seized from the cellular phone identified as "Item 2024-965/7.22, iPhone blue nike and Louis Vuitton case" and any evidence seized outside the timeframe of September 17, 2024 through November 25, 2024, and otherwise DENIED;

4. Defendants' Joint Motion to Suppress Evidence Obtained by Search and Seizure (DNA Evidence) (ECF No. 50) is DENIED;

5. Defendants' Joint Motion to Suppress Evidence Obtained During the Execution of a Search Warrant (Apartment) (ECF No. 52) is DENIED;

6. Defendants' Joint Motion to Suppress Evidence Seized from Unlawful Stop and Search (ECF No. 53) is DENIED AS MOOT; and

7. Defendant Donte Gardner's Motion to Suppress Statements (ECF No. 56) is DENIED.

Dated: August 20, 2026

BY THE COURT:

s/Nancy E. Brasel
Nancy E. Brasel
United States District Judge